Revised June 2, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 97-10858

---

IVING THOMAS; BARBARA THOMAS

Plaintiffs-Appellees

versus

CITY OF DALLAS; ET AL

Defendants

DARWIN GAINES; AQUILLA ALLEN

Defendants-Appellants

---

Appeals from the United States District Court
for the Northern District of Texas

---

May 11, 1999

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This claim arises from a bureaucratic snafu. The City of Dallas, by a series of mistakes, demolished a small house after erroneously concluding it was a nuisance. This suit by the property owner ensued. We must decide whether the district court erred in refusing to recognize a defense of absolute immunity to a claim for money damages asserted by an official of the responsible city agency and qualified immunity asserted by one of its

employees.  We conclude that the invoked defenses are available and reverse and remand.

I

In 1993, Iving and Barbara Thomas purchased a single family home at 4226 Landrum Avenue, Dallas, Texas.  The Thomases never resided there but were making repairs and improvements to the house over time.  In January 1994, the Code Enforcement Department of the City of Dallas gave Mr. Thomas a notice of violation regarding the detached garage and told Mr. Thomas to repair or demolish the accessory structure within 30 days.  Four months later, the code inspector found no repairs or demolition of the garage and issued a citation to Mr. Thomas.  The code inspector forwarded the file on the garage to the Urban Rehabilitation Standards Board on June 20, 1994.  The URSB is a board of volunteers appointed by the mayor and city council to decide cases about urban nuisance.

The URSB scheduled a hearing on October 4, 1996 regarding the demolition of the garage.  Notice was sent to the last known address for Iving Thomas, 4226 Landrum Avenue, Dallas, Texas 75216, but the notice was returned to the URSB as unclaimed.  At the hearing, the case was "passed" so that the URSB could later assess the main structure with the accessory structure in one hearing.[1]

_____

[1]The Thomases assert that there is neither a record of an interior inspection of the house nor a record that they were given any notice about substandard conditions of the house.

2

A new hearing on the two structures was set for November 1, 1994. In the meantime, on October 6, 1994, Mr. Thomas applied for and received a demolition permit from the city and demolished the garage.

Aquila Allen, the URSB Administrator, sent notice of the scheduled November 1, 1994 URSB hearing to the last known address of Iving Thomas. The notice provided, in pertinent part, the following:

> Property located at 4226 Landrum Avenue, Lot(s) 12, Block 5/6083 will be among the properties considered. At this hearing the Administrator will present evidence of the condition of the structure(s). The owner, lessor, occupant or lienholder, will be given the opportunity to present evidence and witnesses if so desired.

The notice then listed ten actions which the URSB could take with respect to the property; the last action listed was demolition.

In addition to this mailed notice, Allen also published notice of the hearing in the *Daily Commercial Record* at least five days before the hearing. While § 27-13 of the Dallas City Code permits notice by publication, it does so only after both written notice and a diligent search to ascertain the party's correct address have failed. The code also provides optional personal notice, which was not attempted in this case.

On November 1, 1994, the URSB reviewed the Thomases' case, even though there was no mail return receipt on file indicating that the Thomases had been given notice by mail. Darwin Gaines, member and chairman of the URSB, presided over the hearing and

3

voted to demolish the Thomases' house on the ground that it was an urban nuisance. The URSB issued a demolition order for the entire dwelling at 4226 Landrum Avenue and a notice was sent to the Thomases' same address. The demolition order was also published in the *Dallas Commercial Record*. On November 11, 1994, a certified mail return receipt was finally received by the URSB, indicating that the Thomases did not receive notice of the scheduled November 1 hearing until a week after the hearing was held.

Nonetheless, the city proceeded with its November 1 decision to demolish the structure. Notice of the demolition order was sent by certified mail, but was returned to the URSB as "return to sender, attempted not known." Eleven months later, on October 25, 1995, the city demolished the Thomases' house and sent them a bill for $1379.32.

The Thomases filed suit asserting claims that Gaines and Allen violated their right to due process under the Fourteenth Amendment by failing to provide proper notice of the URSB hearings concerning the demolition of their house.[2] The district court granted the Thomases' summary judgment motion, specifically denying the absolute and qualified immunity defenses raised by Gaines and Allen.

---

[2]The Thomases also sued the City of Dallas under § 1983 and filed a motion for partial summary judgment against the City. The district court granted the motion. That ruling is not before us.

4

Gaines and Allen appeal. Under the collateral order doctrine, we have jurisdiction over this interlocutory appeal to review the district court's denial of immunity to Gaines and Allen. See Cantu v. Rocha, 77 F.3d 795, 802-03 (5th Cir. 1996)(citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

## II

We review a summary judgment de novo, applying the same standards as used by the district court, reviewing the facts and drawing inferences in favor of the nonmoving party. See Elliott v. Lynn, 38 F.3d 188 (5th Cir. 1994). Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "To win summary judgment, the movant must show that the evidence would not permit the nonmovant to carry its burden of proof at trial." Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998).

## III

Gaines claims absolute immunity, alternatively qualified immunity, contending the URSB performs a quasi-judicial function. The Thomases do not say otherwise for orders to demolish houses. Rather, they contend that Gaines voted to demolish their house when there was no evidence in the URSB file of notice to the Thomases of such a hearing and that act should not be shielded. This argument fails to grasp the reach of absolute immunity. As we will explain, if the job enjoys absolute immunity, the inquiry into liability

5

narrows to whether the official was about his work when engaged in the accused conduct. Failure in a given case to apply the rules correctly does not leave an official unsheltered from liability -- indeed, that is the protection afforded by absolute immunity.

An official who seeks absolute immunity has the burden of showing that public policy justifies the extension of the doctrine of judicial immunity. See Butz v. Economou, 438 U.S. 478, 506-07 (1978). To assess whether absolute immunity should be extended, we must examine the character of the officer's duties and the relationship to the parties. See Mylett v. Mullican, 992 F.2d 1347, 1352 (5th Cir. 1993)(citing Stump v. Sparkman, 435 U.S. 349, 359 (1978)). Unfortunately, our inquiry is less than exact. We consider the following factors:

> (1) the need to assure that the individual can perform his functions without harassment or intimidation;
>
> (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;
>
> (3) insulation from political influence;
>
> (4) the importance of precedent;
>
> (5) the adversarial nature of the process;
>
> (6) the correctability of the error on appeal.

Cleavinger v. Saxner, 474 U.S. 193, 202 (1985) (citing Butz, 438 U.S. at 512).

Absolute immunity extends to agency or board officials performing functions that are quasi-judicial in nature. See

6

O'Neal v. Mississippi Bd. of Nursing, 113 F.3d 62, 65 (5th Cir. 1997); Johnson v. Kegans, 870 F.2d 992, 996 (5th Cir. 1989). We are to use a "functional approach" that looks to "the nature of the function performed, not the identity of the actor who performed it." Imbler v. Pachtman, 424 U.S. 409, 431 (1976). The six enumerated factors, characteristics of the judicial processes, serve to assist in the inquiry into function. See Cleavinger, 474 U.S. at 202. Here, it appears that at least five of the six factors favor absolute immunity.

First, the URSB is charged with the inherently controversial task of demolishing private residences. It is comprised of volunteer members serving in unpaid, two-year positions. This is significant because harassing litigation takes a heavy toll when the task depends on volunteers from the community.

Second, the URSB proceedings have sufficient procedural safeguards. The City Code provides that property owners have a right: to receive notice of URSB hearings, see Dallas, Tex., Rev. City Code ch. 27, art. II, § 27-13(b); to present and cross-examine witnesses, see id. § 27-9(c); to request that a case be reheard, see id. § 27-14(a), (b); and to appeal an adverse decision to state district court, see id. § 27-9(e).

Third, the members of the URSB are not elected, but appointed by members of the city council. To this extent, they are shielded from direct political influence.

7

Fourth, although the URSB's decisions are not guided by URSB precedent, the board is bound by specific standards for evaluating structures set in the Dallas City Code. This factor does not meaningfully point in one direction or the other.

Fifth, hearings before the URSB are adversarial. Parties are free to present evidence and testimony, see id. § 27-9(c); witnesses must testify under oath, see id. § 27-9(a); and parties have the right to cross-examine adverse witnesses, see id. § 27-9(c). The district court was persuaded that the city code aside, there was in fact no meaningful cross-examination because staff had briefed the board privately before the hearing. We find no record basis for a conclusion as a matter of law that the city code was ignored in the routine of business. That most matters are uncontested does not mean that the right was not available.

Finally, as already noted, errors may be corrected on appeal to state district courts. See id. § 27-9(e). The federal district court did not think this judicial review was of much practical value. As we see it, the procedural apparatus is sound, and we have no record basis for concluding that it is unsound in operation.

These general factors favor immunity. Our focus now must be upon the defendants' particular job responsibilities and their acts about which the Thomases complain. See Mylett v. Mullican, 992 F.2d 1347, 1352 (5th Cir. 1993).

8

Gaines is a member of the URSB and its chairman. As chairman he presides over all URSB hearings and is responsible for administering oaths. As a participating member, he votes on cases based on the testimony and evidence before the panel. Gaines functions in a manner comparable to that of a judge. See Swann v. Dallas, 922 F. Supp. 1184, 1192-95 (N.D. Tex. 1996) (holding in a comprehensive and well-reasoned opinion that members of URSB are entitled to absolute immunity); see also Butz, 438 U.S. at 511-17; O'Neal, 113 F.3d at 65. We are persuaded that the district court erred in rejecting Gaines' claim of absolute immunity.

IV

Allen also claims absolute immunity, alternatively, qualified immunity. She asserts her position is essentially that of a prosecutor. See URSB Code § 27-13(j). We agree with the district court that the claim of absolute immunity is not supportable. Allen's duty is more accurately characterized as administrative, rather than prosecutorial, and a person performing routine administrative duties is not entitled to absolute immunity. See Tarter v. Hury, 646 F.2d 1010, 1012 (5th Cir. 1981); Williams v. Wood, 612 F.2d 982, 984-85 (5th Cir. 1980).

V

To determine whether Allen is entitled to qualified immunity, we must determine (1) whether the Thomases stated a claim for violation of a constitutional right; (2) whether this constitutional right was established at the time of the actions

9

underlying this lawsuit; and (3) whether the Thomases established that Allen's conduct was objectively unreasonable in light of the legal rules clearly established. See Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1305 (5th Cir. 1995).

The Thomases alleged that Allen denied them due process by failing to provide them with proper notice of the hearing concerning the demolition of their house. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950) (holding that state action affecting property generally requires advance notice). The first two prongs of the qualified immunity test are satisfied, and we turn to the third -- whether Allen's actions were objectively unreasonable.

The district court denied qualified immunity finding that Allen's conduct was not objectively reasonable. The district court concluded that "[t]he uncontroverted facts show that Ms. Allen knew that the Plaintiffs had not received notice of the October or November hearings and that the Board could not proceed until they had been given proper notice." Allen challenges the district court's conclusion and argues that she is entitled to qualified immunity because her actions were objectively reasonable.

While the summary judgment record indicates that either the members of the URSB, the URSB Administrator, or the URSB staff typically would check a file before a hearing to see if there was a return receipt from a targeted individual, Chapter 27 of the Dallas City Code, entitled Minimum Urban Rehabilitation Standards,

10

provides that the director/administrator of the URSB is responsible for giving notice to targeted individuals. We agree with the district court that Allen, as the administrator of the URSB, bears the responsibility of ensuring that notice is given.

Allen maintains that she gave the notice required by Chapter 27 of the Dallas City Code. She mailed certified notice of the scheduled October and November hearings as well as the outcome of the November 1 hearing to the Thomases' last known address. In addition, she gave notice by publication of the pending demolition order. Yet, the Thomases argue it was objectively unreasonable to allow the November 1 hearing to proceed when no return receipt was on file, and the certified mail receipt showed the Thomases did not receive the notice of the November 1 meeting until November 8.

While it is arguable that Allen should have known that the Thomases' return receipt card was not in the file at the time of the November 1, 1994 hearing, that alone does not establish that she intentionally and knowingly violated the Thomases' due process right in violation of § 1983. Allen made the proper attempts to notify the Thomases, but was undoubtedly negligent in failing to bring the lack of a return receipt in the Thomases' file to the URSB's attention. Whether Allen's conduct constituted an intentional deprivation of the Thomases' due process rights or demonstrated that she was "plainly incompetent" in her duties as the URSB Administrator is a genuine issue of material fact that should be determined by a jury. See Cantu, 77 F.3d at 806 (stating

11

that "[q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'" (citing Anderson, 483 U.S. at 638 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986))).

## VI

In sum, we find that Gaines is entitled to absolute immunity, but Allen is not entitled absolute immunity. The district court's grant of summary judgment against Allen on the question of qualified immunity is REVERSED and REMANDED for proceedings consistent with this opinion.