IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-31168
_____


DANIEL TURNER

                              Plaintiff - Appellee

        v.

HOUMA MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD; PAT
MCKEY; TIMOTHY WALLACE; JOHNNY LOPEZ; JOE ROY; DAVID
FALGOUST; CRAIG LANDRY

                              Defendants - Appellants

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

October 18, 2000

Before KING, Chief Judge, and CUDAHY[*] and WIENER, Circuit Judges.

KING, Chief Judge:

Defendants-Appellants, the Houma Municipal Fire and Police

Civil Service Board, and board members Pat McKey, Timothy

Wallace, Johnny Lopez, Joe Roy, David Falgoust, and Craig Landry,

appeal from the district court's denial of Defendants-Appellants'

summary judgment motion.  They argue that the district court's

holding that they were not entitled to absolute quasi-judicial

immunity in their "official capacities" was erroneous.  We find

_____

    [*]  Circuit Judge of the Seventh Circuit, sitting by
designation.

no fault with the district court's denial of absolute quasi-judicial immunity for the Board and its members sued in their official capacities under 42 U.S.C. § 1983 and, therefore, affirm the judgment of the district court.

## I. FACTUAL BACKGROUND

The City of Houma Municipal Fire and Police Civil Service Board ("Houma Board") sits in the Parish of Terrebonne, Louisiana. Created pursuant to Louisiana statute, LA. REV. STAT. ANN. §§ 33:2471-33:2506, the Houma Board serves as the organization responsible for representing "the public interest in matters of personnel administration in the fire and police services of the [local] municipal entity." LA. REV. STAT. ANN. § 33:2477(1) (West 2000). The Houma Board advises the mayor, the commissioner of public safety, and the chiefs of fire and police in the municipality on the personnel administration of the fire and police departments. See id. § 33:2477(2). Relevant to the instant case, the Houma Board also is charged with conducting investigations and adjudicating complaints regarding fire and police employees. See id. § 33:2477(5);(6).

Daniel Turner, Plaintiff-Appellee, became a fireman with the City of Houma Fire Department in 1968 and eventually rose through the ranks to the position of provisional Fire Chief in 1997. The conflict underlying this appeal arises as a result of

2

investigations and hearings initiated by the Houma Board into Turner's fitness as provisional Fire Chief. Turner, an African-American, claims he would have been the first African-American permanent Fire Chief in Houma, but for the Houma Board's actions. Believing the hearings to be racially motivated and discriminatory, Turner sued the Houma Board and board members in their individual and official capacities, under 42 U.S.C. § 1983, claiming violations of his Fourteenth Amendment due process and equal protection rights.

The central conflict between Turner and the board members involved a disagreement over the qualifications necessary to be employed as a Fire Training Officer for the City of Houma.[1] In July 1997, Turner, in his role of provisional Fire Chief, requested that the Houma Board modify the qualification requirements for the position of Fire Training Officer and delay the test for the position scheduled to be given September 16, 1997. Turner's proposal would have eliminated the requirement that an individual serve two years as captain prior to applying for the position of Fire Training Officer. The Houma Board tabled Turner's request until after the September 16 exam and asked him to submit the request again in writing.

On September 11, 1997, the Terrebonne Parish Consolidated Government filed a petition for a temporary restraining order

---

[1] The Fire Training Officer is responsible for training all firemen in the City of Houma.

(TRO) and injunction requesting that the administration of the exam be enjoined. It argued to the court that the two-year requirement gives the Fire Training Officer position the appearance of a "promotional class" position rather than a "competitive class" position and thereby presents an arbitrary barrier to applicants. Turner was not a party to the petition.

The state court granted the TRO. At the trial regarding the petition, however, allegations surfaced that Turner had misused his authority as provisional Fire Chief in his efforts to change the Fire Training Officer qualifications. The state court concluded that Turner had acted illegally and in violation of the Civil Service Rules in his actions with employees concerning the dispute over the Fire Training Officer qualification requirements.[2] The state court then dissolved the TRO.

As a result of the allegations at trial, the Houma Board began investigating Turner. The Board asked the Terrebonne Parish Consolidated Government to investigate and submit a report on his conduct. On November 12, 1997, Turner was placed briefly on administrative leave, but no further disciplinary action was taken.

---

[2] The state court found that Turner had intimidated other firemen and had misused his position of authority in an attempt to change the requirements for the Fire Training Officer position. The court found that these actions had a "chilling effect" on the rights of civil service employees.

4

Also in November, Oswald Stoufflet, a Captain in the Houma Fire Department filed a complaint against Turner with the Houma Board. The complaint alleged that Turner acted unprofessionally toward Stoufflet.[3] The Houma Board held a public hearing on Turner's conduct with Stoufflet on January 6, 1998. After the hearing, the Board suspended Turner for 30 days. Turner appealed the decision to state court.[4] Turner also requested a certified transcript of the hearing, a request that the Board never honored. Turner alleges that the Board's reluctance to provide him with a transcript has prevented him from appealing the adverse ruling of the hearing.

On February 6, 1998, the Houma Board initiated another investigation into the allegations detailed in the state court trial. A hearing was convened in July and August 1998, which resulted in Turner's suspension for 70 days. Turner alleges numerous procedural errors in this hearing as a result of the Board's alleged racial and personal bias against him. Turner also argues that the hearings and investigations were an attempt

---

[3] In Stoufflet's complaint to the Houma Board, he stated that Turner acted "in a manner unbecoming to his position and to me personally."

[4] The appeal to the state court alleged that (1) the hearing was held in violation of Louisiana statutory law governing notice of hearings in that the Houma Board had failed to inform Turner of the date, time, and place of the hearing, LA. REV. STAT. ANN. § 33:2501(B)(1); (2) the decision was contrary to law and evidence as to the misconduct charge; (3) the board members were biased against him; and (4) the Board did not fairly evaluate the arguments.

to derail his appointment as the first African-American permanent Fire Chief.

In January 1999, Turner brought a 42 U.S.C. § 1983 ("§ 1983") suit against the Houma Board and board members Pat McKey, Timothy Wallace, Johnny Lopez, Joe Roy, David Falgoust, and Craig Landry in their official and individual capacities. He alleged that the disciplinary hearings were racially discriminatory and violated his Fourteenth Amendment due process and equal protection rights. He also alleged that as a result of the Board's actions he was deprived of the rights, opportunities, and privileges of employment and that he suffered intentionally inflicted emotional distress. Turner sought compensatory and punitive damages from the Houma Board and its members. In addition, he sought a declaration that the manner in which the defendants conducted the hearing violated his equal protection and due process rights existing under the Fourteenth Amendment and sought injunctive relief asking that the defendants discontinue those practices.

## II. PROCEDURAL BACKGROUND

In the district court, the defendants moved for summary judgment and, in the alternative, dismissal for failure to state

a claim on which relief can be granted. The Board and its members asserted absolute quasi-judicial immunity for their adjudicative actions of investigating and disciplining Turner. The defendants also requested a partial motion to dismiss, based on Turner's response to an interrogatory that he was only pursuing official-capacity claims against the board members. Turner's district court complaint was thereby read to have dropped any individual-capacity claims against the Houma Board members.

The district court converted the motion to dismiss into a motion for summary judgment,[5] denying defendants' immunity argument as it related to the official-capacity immunity and granting the unopposed motion to dismiss the individual-capacity claims. Notwithstanding the district court's dismissal of the individual-capacity claims, the defendants appealed both the portion of the lower court's decision that they had prevailed upon below and the denial of official-capacity immunity.[6] Because there is no appealable issue on their individual-capacity claims, we will not address it. The single issue before this

---

[5] The district court found that because matters outside of the pleadings had been presented to and not excluded by the court, this was sufficient to notify the parties that the court might treat this motion as one for summary judgment under FED. R. CIV. P. 12(b)(6). See Estate of Smith v. Tarrant County Hosp. Dist., 691 F.2d 207, 208 (5th Cir. 1982).

[6] Turner's appellate brief also is replete with references to arguments about individual-capacity immunity claims, notwithstanding that the issue is not before us on appeal.

court is whether the district court erred in not granting absolute quasi-judicial immunity to the Houma Board and its members in their official capacities. As there is no absolute quasi-judicial immunity defense available to the Board or to its members sued in their official capacity under § 1983, we affirm the district court's partial denial of summary judgment.

## III. DISCUSSION

### A. Appellate Jurisdiction

As an initial matter, Turner challenges this court's jurisdiction to hear this appeal from the denial of summary judgment. The general rule is that courts of appeals do not have appellate jurisdiction to review a district court's denial of summary judgment because the denial is not a final order within the meaning of 28 U.S.C. § 1291. See Lemoine v. New Horizons Ranch & Ctr., Inc., 174 F.3d 629, 633 (5th Cir. 1999). An exception to this rule exists when the summary judgment motion is premised on a claim of absolute or qualified immunity. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Our jurisdiction over this interlocutory appeal arises because the immunity claim is separate from the underlying merits of the case and fits within the collateral order exception set out in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546 (1949). This jurisdiction, however, is limited to appeals based on issues of

8

law and "concern only [the] application of established legal principles." Jones v. Collins, 132 F.3d 1048, 1051 (5th Cir. 1998); see also Lemoine, 174 F.3d at 633; Stem v. Ahearn, 908 F.2d 1, 3 (5th Cir. 1990) ("[T]he district court's denial of a motion for summary judgment because of the perceived lack of qualified or absolute immunity constitutes an appealable 'final judgment' only if . . . the immunity defense turns upon an issue of law and not of fact.").

Turner argues on appeal that the district court's denial of summary judgment turned on a factual question, not an issue of law. We disagree.

The district court held that the Board and its members sued in their official capacity are not entitled to a defense of absolute quasi-judicial immunity. Turner's challenge to this holding is a purely legal question, presenting no factual or evidentiary difficulties. "Whether a defendant possesses absolute immunity from suit is a question of law." Walter v. Torres, 917 F.2d 1379, 1383 (5th Cir. 1990). We therefore have jurisdiction over this appeal to review the district court's denial of immunity.


## B. Standard of Review

This court reviews de novo denials of motions for summary judgment based on qualified or absolute immunity claims. See Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999). "Summary

9

judgment is proper only 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

"Courts of Appeals consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." Spivey, 197 F.3d at 774-75 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. See FED. R. CIV. P. 56(c); Celotex Corp., 477 U.S. at 322.

C. Absolute Quasi-Judicial Immunity Is Inapplicable in Official-Capacity Actions

Appellants contend that the district court erred in not holding that the Houma Board and its members[7] were entitled to

---

[7] As will be discussed infra, in an official-capacity action the Board and its members are analytically the same entity because liability only attaches to the municipality or like governmental entity.

absolute quasi-judicial immunity in their official capacities.[8] This argument misconstrues the distinction between immunities available for "individual-capacity"[9] and "official-capacity" suits under § 1983. Finding that the district court applied the correct immunity principle for "official-capacity" suits, we seek only to reaffirm this distinction as it applies to the cases in this circuit.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). Accordingly, a § 1983 suit naming defendants only in their "official capacity" does not involve personal liability to the individual defendant. Concomitantly, defenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity suits. See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); see also Johnson v. Kegans, 870

---

[8]  As set out in the procedural background, appellants framed their appeal as challenging the district court's holding as it applied to both individual- and official-capacity claims.

[9]  We understand individual-capacity claims and personal capacity claims to be synonymous. See Kentucky v. Graham, 473 U.S. 159, 165 n.10 (1985) ("Personal capacity actions are sometimes referred to as individual capacity actions.").

11

F.2d 992, 998 n.5 (5th Cir. 1989) ("Immunity does not bar suits against defendants in their official capacities."); Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999).

The Supreme Court clarified this distinction in Kentucky v. Graham and again in Hafer v. Melo, finding immunity to be inapplicable in § 1983 suits against government officials in their "official capacity."

> As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

Graham, 473 U.S. at 166 (citations omitted); see also Hafer, 502 U.S. at 25 (reiterating the reasoning of Graham); Burge, 187 F.3d at 466 ("Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983.").[10]

---

[10] For plaintiffs such as Turner, however, surmounting an appellant's immunity argument is only the first step. By framing his suit only against the Houma Board members in their "official capacity," he will have to plead and prove that the Board had a custom or policy to discriminate. See Monell v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an

12

Appellants' contention that the Houma Board members should be granted absolute quasi-judicial immunity in their official capacities derives from a misreading of the case law in this circuit. To be fair, this circuit has not been explicit in articulating which "capacity" we have granted absolute quasi-judicial immunity; however, a precise reading of the cases relied on by appellants demonstrate that the holdings in Graham and Hafer have been consistently applied in this circuit and offer no support for the appellants' argument.

Appellants primarily rely on Mylett v. Mullican, 992 F.2d 1347 (5th Cir. 1993), for the proposition that the doctrine of absolute quasi-judicial immunity applies to civil service boards and their members in both individual and official capacities. Mylett was a Texas police officer who was suspended from the police force. Mylett alleged violations of the First and Fourteenth Amendments, as they related to the disciplinary proceedings surrounding his suspension. A 42 U.S.C. §§ 1983 and

---

entity is responsible under § 1983."). Graham detailed the particular elements of an official-capacity claim as follows:

> More [than a deprivation of a federal right] is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation, . . . thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law.

Graham, 473 U.S. at 166 (citations omitted). As Turner pleaded a claim that defendants unlawfully pursued a policy and practice of discriminating against him solely because of his race, we leave it to the district court to determine the merits of this claim.

1985 suit was brought against the police chief, three fellow police officers, the members and director of the civil service commission, and seven members of the city council. The civil service commissioners were sued in their individual and official capacities. The district court dismissed the personal-capacity claims against the civil service members on the basis of absolute quasi-judicial immunity. Importantly, the suit against the municipality and the police chief was not dismissed and was tried to a jury.

In upholding the district court's dismissal on absolute quasi-immunity grounds, this court held "that the individual Commissioners are entitled to absolute immunity for the performance of their official duties." Mylett, 992 F.2d at 1353 (emphasis added). Appellants erroneously interpret this to mean that the Houma Board members are immune in their official capacities.

The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality. Mylett only discussed the former, never addressing the latter because Mylett's suit against the municipality had already gone forward to the jury. In essence, his official-capacity suit against the members of the Civil Service Commission had already been accepted and had gone to the jury as a suit against the city. Because "an official-capacity suit is, in all respects other than name, to be

14

treated as a suit against the entity," Graham, 473 U.S. at 166, and the entity at issue was the municipality, the court was not required to make a determination regarding the official-capacity action.  The court's discussion was necessarily cabined to the open question of individual-capacity immunity.[11]  We therefore read Mylett as governing only individual-capacity claims, and remaining consistent with Graham and Hafer, do not accept appellants' interpretation of "official-capacity" immunity.

Courts discuss immunity defenses without clearly articulating to whom and in which capacity those defenses apply,[12] resulting in confusion which has an obvious cause.  In

---

[11]  This reading is further supported by the fact that this court analyzed the individual commissioners' immunity under the Cleavinger v. Saxner doctrine applicable to personal-capacity immunity, not official-capacity immunity.  See 474 U.S. 193, 201-02 (1985).  Cleavinger involved an appeal by members of a Prison Institutional Discipline Committee requesting absolute immunity from a personal damages action.  The Supreme Court rejected the committee members' request, finding their position warranted only qualified immunity for damages actions brought against them in their individual capacities.  See Cleavinger, 474 U.S. at 207-08.
In addition, the cases cited to support the court's holding only relate to immunity for individual-capacity suits.  See Brown v. Griesenauer, 970 F.2d 431 (8th Cir. 1992) (suing official in individual capacity); Lentsch v. Marshall, 741 F.2d 301 (10th Cir. 1984) (suing witness in individual capacity); Hollowell v. Gravett, 703 F. Supp. 761 (E.D. Ark. 1988) (suing private attorney contractually involved with city in unspecified capacity); Burton v. Peartree, 326 F. Supp. 755 (E.D. Pa. 1971) (suing 44 government officials in individual capacities).

[12]  The blame for this confusion must be shared with litigants who are not precise in their pleadings.  See Graham, 473 U.S. at 167 n.14 ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both.  'The course of proceedings' in such cases typically will indicate the nature of the liability sought

15

any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued, there potentially exists an overlapping cause of action. The official-capacity claims and the claims against the governmental entity essentially merge. Thus, when the suit against the city or state fails for a jurisdictional, procedural, or pleading defect, the remaining immunity discussion by the courts necessarily concerns only the personal liability of individuals sued in their individual capacities.

Appellants' failure to grasp this point is evidenced by their reliance on cases that have granted an unspecified immunity to individuals, but have also recognized a separate action against the city on the same facts.[13] We read these cases as discussing only individual-capacity immunity because a grant of official-capacity immunity would also have barred the claim

to be imposed.").

[13] For example, in <u>Thomas v. City of Dallas</u>, 175 F.3d 358 (5th Cir. 1999), and lower court decisions such as <u>Brossette v. City of Baton Rouge</u>, 837 F. Supp. 759 (M.D. La. 1993) and <u>Jefferson v. City of Hazlehurst</u>, 936 F. Supp. 382 (S.D. Miss. 1995), courts have found absolute quasi-judicial immunity for government officials and yet also have recognized that claims against the city were not barred by that immunity. <u>See</u> <u>Thomas</u>, 175 F.3d at 362 n.2 (analyzing individual immunity, but also recognizing that a parallel suit against the City of Dallas had been partially resolved on summary judgment in plaintiff's favor); <u>Brossette</u>, 837 F. Supp. at 764 (recognizing cause of action against the city, but dismissing the suit as without merit); <u>Jefferson</u>, 936 F. Supp. at 391 (same). It follows from these cases that the immunity discussed could not have been official-capacity immunity, because that immunity would also have precluded the suit against the city.

against the city, contrary to <u>Monell</u> and its progeny.  <u>Cf.</u> <u>Thomas</u> <u>v. City of Dallas</u>, 175 F.3d 358 (5th Cir. 1999).

Appellants also erroneously rely on discussions of immunity in cases granting absolute individual immunity in § 1983 suits against the state.  In these cases, there can be no official-capacity immunity suit, because the entity of the state cannot be sued without abrogating Eleventh Amendment immunity.[14]  Thus, the discussion of immunity in these cases must center around individual immunity and not, as the appellants claim, individual

---

[14]  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 & n.10 (1989); <u>see also</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").

and official immunity.[15]  These cases, therefore, add no support

to appellants' reading of our official-capacity immunity cases.[16]

Finally, appellants place great emphasis on the history and

doctrinal development of absolute quasi-judicial immunity as it

relates to quasi-judicial entities.  See e.g., Bradley v. Fisher,

13 Wall. 335 (1871); Pierson v. Ray, 386 U.S. 547 (1967); Imbler

v. Pachtman, 424 U.S. 409 (1976); Butz v. Economou, 438 U.S. 478

(1978).  We take no issue with this argument as it relates to

individuals being sued in their individual capacities.  Reliance

on these cases for official-capacity claims, however, blurs the

distinction between the types of liability, and thus immunity

defenses, that arise from an individual-capacity suit and the

_____

[15]  For example, in O'Neal v. Mississippi Board of Nursing,
the appellants ignore the discussion describing the lower court's
dismissal of the official-capacity claims based on Eleventh
Amendment immunity.  See 113 F.3d 62, 64 (5th Cir. 1997).  The
subsequent discussion, therefore, necessarily focused on the
personal liability of the defendants.  The appellants make the
same error in relying on Chiz's Motel & Restaurant Inc. v.
Mississippi State Tax Commission, 750 F.2d 1305 (5th Cir. 1985).
In that case, the court's discussion of absolute immunity focused
on individual liability only after precluding § 1983 liability of
the state based on the Eleventh Amendment immunity jurisdictional
bar.  See id. at 1307; see also Horwitz v. State Bd. of Med.
Exam'rs., 822 F.2d 1508 (10th Cir. 1987); Johnson v. Rhode Island
Parole Bd. Members, 815 F.2d 5 (1st Cir. 1987).

[16]  Other cases listed by appellants to support their broad
reading of absolute quasi-judicial immunity are equally
inapposite, involving only individual-capacity claims.  See
Hulsey v. Owens, 63 F.3d 354, 355 (5th Cir. 1995) ("Hulsey sued
Owens and Green 'in their individual/personal capacities. . . ."
(emphasis added)); Watts v. Burkhart, 978 F.2d 269, 271 (6th Cir.
1992) ("[T]he complaint was amended to make it clear that the
board members were being sued in their individual capacities.").

18

lack of liability and resulting lack of immunity in official-capacity suits. Pointedly, we note that the above Supreme Court cases and all of the post-Graham cases cited by the appellant involve the personal liability of defendants sued in their individual, not official, capacities under § 1983. We therefore find no merit in appellants' argument.

## IV. CONCLUSION

For the above stated reasons, we AFFIRM.