IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-20030

ERNESTO R HINOJOSA, SR

Plaintiff–Appellant

v.

GARY L JOHNSON, EXECUTIVE DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE; DOUGLAS DRETKE, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL
INSTITUTIONS DIVISION; JOE FERNALD, Warden, Wynne Unit; KATHY
LAUGHLIN, Chief of Classification, Wynne Unit; JAMES SIMPSON, JR,
Captain of Correctional Officers, Wynne Unit; GEORGE WEBSTER, Captain
of Correctional Officers, Wynne Unit; ANGELA MASSIE, Correctional
Officer, Wynne Unit, in their individual capacity

Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-1886

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Proceeding pro se, Plaintiff-Appellant Ernesto R. Hinojosa, Sr., Texas
inmate # 586249, filed a verified civil rights complaint alleging that officials of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

the Texas Department of Criminal Justice ("Defendants") violated his right to be free from cruel and unusual punishment by failing to protect him from an assault by a fellow inmate. On October 20, 2006, the district court granted Defendants' Motion for Summary Judgment. Hinojosa now appeals, asserting that the district court: (1) abused its discretion by simultaneously granting Defendants' Motion for a Protective Order and denying Hinojosa's Federal Rule of Civil Procedure 56(f) motion for a continuance; (2) erroneously granted Defendants' Motion for Summary Judgment; and (3) abused its discretion by denying Hinojosa's Motion for Appointment of Counsel. For the following reasons, we AFFIRM in part, REVERSE in part, VACATE in part, and REMAND this case for further proceedings consistent with this opinion.

I.

Hinojosa was housed in an open dormitory at the Wynne Unit in a state prison in Huntsville, Texas. On September 24, 2003, inmate Joseph Brown attacked Hinojosa without provocation in the dormitory, where Brown was also housed. No guards were present. Brown repeatedly struck Hinojosa in the head with a plastic toilet brush until the brush broke, at which point Brown attempted to stab Hinojosa with the brush handle. Another inmate intervened to stop the attack. As a result of the attack, Hinojosa suffered a head wound that bled profusely, requiring six stitches. In addition, Hinojosa had several contusions on his back as a result of Brown's attempts to stab him with the broken toilet brush. Hinojosa alleges that, as a result of his injuries, he suffered pain and has continued to experience headaches and dizziness. Following the attack, Brown was disciplined and transferred to administrative segregation.

Hinojosa thereafter filed this civil rights action under 42 U.S.C. § 1983 against several prison officials, alleging failure to protect in violation of the Eighth Amendment to the United States Constitution and Article I, § 13 of the

Texas Constitution.[1]  Hinojosa named as defendants Texas Department of Criminal Justice ("TDCJ") Executive Director Gary Johnson; TDCJ Correctional Institutional Division Director Douglas Dretke; TDCJ Wynne Unit Warden Joe Fernald; Wynne Unit Chief of Classification Kathy Laughlin; Correctional Officers Captains James Simpson, Jr. and George Webster; and Correctional Officer Angela Massie.

In his complaint, Hinojosa alleged that Brown was a delusional paranoid-schizophrenic with a propensity towards committing violent acts.  He further alleged that the Wynne Unit was inherently dangerous because: the dorms where Hinjosa was assaulted were routinely understaffed; the officers assigned to the dorms routinely neglected their duties to monitor the areas and inmates in their charge; no audio or video surveillance monitored the dorms; janitorial tools–such as toilet bowl brushes, mops, and brooms–were readily available in the open dorm areas, where they can and have been converted into weapons; and inmates with mental problems and a propensity for violence (such as Brown) were not segregated and were allowed to live in the open dorms.  Furthermore, Hinojosa asserted that Defendants Fernald, Laughlin, Simpson, Webster, and Massie had actual knowledge of Wynne Unit's dangerous prison conditions and the specific dangers caused by Brown's presence, and they failed to take reasonable measures to address this substantial risk of harm.  With respect to Defendants Johnson and Dretke, Hinojosa alleged only that these Defendants had actual knowledge of the substantial risk of harm created by understaffing.

---

[1] Hinojosa does not assert or provide any authority for the proposition that the Texas Constitution's prohibition against "cruel or unusual punishment" affords any greater protection than the US Constitution's prohibition against "cruel and unusual punishment."  Our analysis, therefore, assumes–as do the parties–that the protections afforded by both constitutions are the same.  See Cantu v. State, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997) (finding "no significance in the difference between the Eighth Amendment's 'cruel and unusual' phrasing and the 'cruel or unusual' phrasing of Art. I, Sec. 13 of the Texas Constitution").

After filing his initial complaint, Hinojosa sought discovery. On October 4, 2005, Defendants filed a motion for a protective order on the basis of qualified immunity. On January 31, 2006, Defendants filed a motion for summary judgment, also on the basis of qualified immunity, asserting primarily that Hinojosa could not establish that any Defendant had actual knowledge of a substantial risk to his safety. Defendants Dretke, Laughlin, Simpson, and Webster also argued for dismissal pursuant to 42 U.S.C. § 1997e, asserting that Hinojosa had not exhausted his administrative remedies against them.

In response, Hinojosa filed a Rule 56(f) motion for a continuance to allow discovery before requiring Hinojosa to respond to Defendants' motion for summary judgment. Noting that it appeared that Defendants were entitled to qualified immunity[2] and that qualified immunity protects government officials from unnecessary litigation burdens–including discovery–the district court granted Defendants protective order and denied Hinojosa's motion for a continuance.[3]

In its order, the district court also denied Hinojosa's motion for the district court to reconsider its decision to deny appointed counsel. The district court explained that Hinojosa had no constitutional right to appointed counsel and that, "[d]espite his limitations, Hinojosa has managed to prosecute his claims in a reasonably effective manner."

After Defendants submitted an amended motion for summary judgment and Hinojosa filed his response, the district court granted summary judgment in favor of Defendants. The court found that Defendants demonstrated that there existed no genuine issues of material fact regarding Hinojosa's claim of a

---

[2] Because Defendants' exhibits in their original motion for summary judgment were illegible, the court ordered Defendants to submit an amended motion for summary judgment.

[3] The district court stated: "Hinojosa will not be allowed to conduct any further discovery until the Defendants have submitted their amended motion for summary judgment and the court has made a determination of its merits."

constitutional violation. Hinojosa now appeals, asserting that the district court: (1) abused its discretion by granting Defendants' Motion for a Protective Order and denying Hinojosa's Rule 56(f) motion for a continuance; (2) erred in granting Defendants' Motion for Summary Judgment; and (3) abused its discretion by denying Hinojosa's Motion for Appointment of Counsel.

## II.

Qualified immunity protects government officials from liability in civil suits unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity doctrine "affords government officials not just immunity from liability, but immunity from suit," including the burdens of discovery. Vander Zee v. Reno, 73 F.3d 1365, 1368 (5th Cir. 1996).

"The party seeking damages from an official asserting qualified immunity bears the burden of overcoming that defense." Bennett v. City of Grand Prairie, 883 F.2d 400, 408 (5th Cir. 1989). To overcome a defendant's entitlement to qualified immunity, a plaintiff must: (1) state a claim for violation of a constitutional right; (2) demonstrate that the constitutional right was established at the time of the actions at issue; and (3) show that the defendant's "conduct was objectively unreasonable in light of the legal rules clearly established." Thomas v. City of Dallas, 175 F.3d 358, 363-64 (5th Cir. 1999).

## III.

It is well settled that the Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). However, not every injury "suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.

To establish a failure-to-protect claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official acted with "deliberate indifference" to the inmate's health or safety. Id. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety"–that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prisoner alleging an Eighth Amendment violation need not show that prison officials believed that harm would actually occur–"it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. A prison official's knowledge of the risk "can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it." Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004). A prison official, however, may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. Furthermore, the mere negligent failure to protect a prisoner from assault does not comprise a constitutional violation. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990).

## IV.

Hinojosa asserts that the district court abused its discretion by denying his Rule 56(f) motion for a continuance of summary judgment and granting Defendants' motion for a protective order before Hinojosa could conduct appropriate discovery. As explained in Section I supra, the district court based its decision to deny Hinojosa's motion and grant Defendants' motion because it

appeared to the district court that Defendants were entitled to qualified immunity.[4]

We review district court dispositions of Rule 56(f) motions to suspend summary judgment and motions for protective orders for abuse of discretion. Stearns Airport Equip. v. FMC Corp., 170 F.3d 518, 534 (5th Cir. 1999) (Rule 56(f) motions); Sanders v. Shell Oil Co., 678 F.2d 614, 618 (5th Cir. 1982) (protective orders).

Although Hinojosa was unable to obtain discovery from Defendants, "Rule 56 does not require that any discovery take place before summary judgment can be granted." Washington v. Allstate Ins. Co., 901 F.2d 1281, 1285 (5th Cir. 1990). When a party believes that "it needs more time to obtain discovery to respond satisfactorily to a motion for summary judgment," Rule 56(f) is the proper remedy. Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1266 (5th Cir. 1991). Rule 56(f) provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Rule 56(f) discovery motions are "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006). To obtain a continuance of a motion for summary judgment, the non-movant must: "(I) request[] extended discovery prior to the court's ruling on summary judgment; (ii) put the trial court on notice that further discovery pertaining to the summary judgment motion is being sought; and (iii) demonstrat[e] to the trial court specifically how the

---

[4] The district court also vaguely noted that "security" concerns justified the protective order.

requested discovery pertains to the pending motion."[5] Wichita Falls Office Assocs. v. Banc One Corp., 978 F.2d 915, 919 (5th Cir. 1992).

The nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir. 1980). "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." Access Telecom, Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 720 (5th Cir. 1999); see also Washington, 901 F.2d at 1285 ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment."). However, where a party seeks discovery "germane to the pending summary judgment motion it is inequitable to pull out the rug from under [it] by denying such discovery." Wichita Falls Office Assocs., 978 F.2d at 920.

A. Defendants Fernald, Laughlin, Simpson, Webster, and Massie

The essence of Hinojosa's claim against Defendants Fernald, Laughlin, Simpson, Webster, and Massie is that: (1) their failure to remove Brown–a mentally unstable inmate with a propensity for violence–from an unsupervised dormitory with unrestricted access to cleaning tools that can easily be transformed into weapons created an inherently dangerous situation for all the inmates living in Brown's dorm; (2) they knew of this substantial risk to inmate safety; and (3) they failed to take any reasonable measures in response.

---

[5] It is undisputed that Hinojosa's Rule 56(f) motion was made well in advance of the district court's ruling, and the motion and supporting declaration put the district court on notice that Hinojosa was seeking discovery pertaining to the summary judgment motion.

Defendants Fernald, Laughlin, Simpson, Webster, and Massie moved for summary judgment, contending that Hinojosa failed to demonstrate deliberate indifference because he did not show that "any of the Defendants possessed knowledge that [Hinjosa] was in danger prior to September 24, 2003." Specifically, the relevant Defendants asserted that there was no evidence that they had actual knowledge of the threat posed by Brown, especially because Hinojosa did not tell anyone in the prison that he felt threatened by Brown. Furthermore, the relevant Defendants argued that there was insufficient evidence to establish that they had actual knowledge that the availability of cleaning tools posed a substantial risk of harm to Hinojosa's safety.

From the summary judgment evidence produced thus far, it appears that Brown has serious mental problems. According to Brown's statement after the attack, he attacked Hinojosa because he thought that Hinojosa had stolen some of his commissary items and because Hinojosa "was sticking something [up] my ass; a finder and/or something like a paper clip." Brown then stated that "[Hinojosa] or others was doing that" and that "[i]t seems like everybody know what was happening but me." Hinojosa, in his statement after the attack, stated that Brown had always exhibited "extreme paranoia" and "had most of 6 dorm living in fear and disrespecting them." Furthermore, in an unsworn declaration,[6] Inmate Richard Lopez, who lived in the same dorm as Hinojosa and Brown, stated that ten days prior to Brown's attack, he warned Captain Sims (a non-defendant), via a Form I-60, that "Inmate Brown was always exhibiting

---

[6] Lopez's unsworn declaration constitutes competent summary judgment evidence because it was made from personal knowledge, set forth admissible facts, showed that he was competent to testify, and was verified as true under penalty of perjury, thus meeting the requirements of Rule 56(e)(1) and 28 U.S.C. § 1746.

delusional behavior," was recently exhibiting an increased level of strange and erratic behavior, and "could hurt someone or could end up getting hurt himself."[7]

The summary judgment evidence produced thus far also shows that Brown had a history of violence but does not reveal any violent incidents in the recent past. Brown is a convicted murderer[8] who has been imprisoned since March 1974. His prison disciplinary record shows disciplinary infractions for: fighting with a weapon in December 1976 and September 1977; possession of a weapon in August 1978; and fighting without a weapon in March 1979, January 1982, and May 1982. There is no evidence of any disciplinary infractions after May 1982. Hinojosa asserted that at least Defendants Fernald, Laughlin, and Simpson had first-hand access to his disciplinary record.

Although this current evidence is insufficient to create a genuine issue of material fact regarding the seriousness of the threat posed by Brown and Defendants' knowledge of such a threat, Hinjosa's requested discovery may very well provide enough evidence to overcome Defendants' summary judgment motion. Most significantly, Lopez–in his unsworn declaration–states that: "A few minutes after the incident, while the investigation was going on in the dorm, I overheard Captain Webster say that he didn't know what Inmate Brown was doing living up there because he (Brown) was violent." Although vague, Defendant Webster's alleged statement shows that he believed that Brown's violent propensities posed a substantial risk of harm to the inmates residing in the dorms and that Brown should not have resided there. Furthermore, this statement implicates Defendants Fernald, Laughlin, Simpson, and Massie

---

[7] Although Lopez's complaint implies a dangerous situation, Brown's reported behavior–on its face–did not indicate that he posed a substantial threat to anyone in the dorms. According to Lopez, Brown simply "didn't like people looking at him," "was always accusing people falsely of going into his house/cubicle and taking things," and "had the habit of shooting the middle finger at people who looked at him or in his direction."

[8] Hinojosa is also a convicted murderer serving a ninety-nine year sentence.

because the statement suggests that Brown was objectively violent and the risk of harm Brown posed to the inmates living in the dorms was obvious.[9] Such facts may be confirmed by Hinojosa's requested discovery, which includes: the deposition of Defendants Fernald, Webster, and Massie; a request for documents containing complaints about Brown's threatening behavior; interrogatories asking about knowledge of prior complaints about Brown's threatening and menacing behavior; interrogatories regarding knowledge about Brown's violent history, disturbed mental state, and pattern of assaulting prisoners with weapons; and a request for Brown's medical records, which may reveal the extent and seriousness of his psychological condition and the risk that such a condition would lead him to commit unprovoked violence.

Given Webster's alleged statement and given that Hinojosa produced evidence that the dorms were largely unsupervised[10] and that there had been at least one prior attack with unsecured cleaning tools in the dorms, Hinojosa's

---

[9] A prison official's knowledge of a substantial risk of harm "can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it." Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004).

Contrary to the analysis of the district court, the fact that no Defendant had advance notification that Brown intended to attack Hinojosa is not dispositive. The Eighth Amendment does not impose a requirement of "advance notification of a substantial risk of assault posed by a particular fellow prisoner." Farmer, 511 U.S. at 849 n.10. A prison official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Id. at 843. It is irrelevant whether a risk comes from "a single source or multiple sources" or whether the risk is borne by a single prisoner for personal reasons or by all similarly-situated prisoners. Id.

[10] In Hinojosa's verified complaint, he alleges that the dorms were largely unsupervised, stating "it was not unusual for an officer to supervise two or three dorms at one time, alternating from one to another." Furthermore, Hinojosa alleged that there existed no audio or video surveillance system to provide additional supervision of the dorms. These allegations came from Hinojosa's personal knowledge and were attested to in his verified complaint–which constitutes competent summary judgment evidence. See Huckabay v. Moore, 142 F.3d 233, 240 n.6 (5th Cir. 1998).

requested discovery could create a genuine issue of material fact regarding a constitutional violation of clearly established law.[11]

We are aware that "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions" and that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Hinojosa, however, has been denied "a full and fair opportunity to discover information essential to [his] opposition to summary judgment," and this limitation is reversible error. Access Telecom, Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 720 (5th Cir. 1999). Hinojosa should have been permitted discovery tailored to uncover "those facts necessary to rule on the immunity defense," including discovery into the mental state and violent tendencies of Brown and Defendants' knowledge of such.[12] Lion Boulos v. Wilson, 834 F.2d 504, 509 (5th Cir. 1987).

The district court, therefore, abused its discretion in denying Hinojosa's Rule 56(f) motion for a continuance and granting Defendants' motion for a

---

[11] If Defendants were aware that permitting Brown to remain in the open dormitories created a substantial risk of serious harm to the other inmates and simply disregarded this risk, such action was not "objectively reasonable in light of clearly established law at the time of the conduct in question." Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007). Such conduct is tantamount to simply permitting "nature to take its course," which the Supreme Court in Farmer found constitutionally impermissible. 511 U.S. at 833.

[12] Although qualified immunity is immunity from suit, including discovery, discovery may proceed against a government official where "the plaintiff's allegations state a claim of violation of clearly established law," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), as long as such discovery is "'narrowly tailored' to the question of qualified immunity." Maxey by Maxey v. Fulton, 890 F.2d 279, 283 (10th Cir. 1989).

With respect to Hinojosa's claim against Defendants Fernald, Laughlin, Simpson, Webster, and Massie, the Defendants do not argue–and the district court did not find–that Hinojosa failed to state a violation of clearly established law. Furthermore, it is implicit in this opinion that Hinojosa did in fact state such a claim. As discussed above, Hinojosa is therefore entitled to limited discovery on the question of Defendants' qualified immunity.

protective order.[13] We thus REVERSE the district court's order in this regard and VACATE the district court's grant of summary judgment in favor of Defendants Fernald, Laughlin, Simpson, Webster, and Massie. This is not to say that these Defendants are not entitled to summary judgment or qualified immunity but only that Hinojosa must be permitted a fair opportunity for discovery so that he may properly oppose any such motion for summary judgment. Because the district court erred in proceeding to rule on the summary judgment motion as it pertained to Defendants Fernald, Laughlin, Simpson, Webster, and Massie, and we vacate this ruling, we need not reach the issue of whether the district court's actual ruling on such motion was erroneous.

B. Defendants Johnson and Dretke

Hinojosa's claim against Johnson and Dretke is that they had actual knowledge of understaffing in the Texas Prison System and the resulting substantial risk of harm created.

Defendants Johnson and Dretke moved for summary judgment, contending that: (1) Hinojosa did not present any evidence that they participated in any unconstitutional acts or implemented any unconstitutional policies; (2) if staffing was inadequate, Hinojosa did not present any evidence that Defendants could have done anything about it; and (3) Hinojosa did not present evidence that inadequate staffing caused the attack.

The district court did not address this separate claim but rather simply granted summary judgment in favor of all Defendants on the basis that Defendants had no knowledge that Brown specifically posed a threat to Hinojosa. This rationale makes no sense with respect to Hinojosa's

---

[13] The district court also noted without explanation and without any indication of in camera review that "many of the records cannot be disclosed for reasons of security." We will not uphold the district court's protective order on the basis of such a vague and unsubstantiated assertion, especially because the entire basis of Defendants' motion for a protective order was its alleged entitlement to qualified immunity without any mention of "security" concerns.

understaffing claim because Hinojosa did not base his claim on Defendant Johnson's and Dretke's knowledge of the threat posed by Brown.

Nonetheless, with respect to this claim, the district court correctly denied discovery and granted summary judgment in favor of Defendants Johnson and Dretke.[14]  For a supervisory official to be held liable, they must "affirmatively participate in acts that cause constitutional deprivation" or "implement unconstitutional policies that causally result in plaintiff's injury."  Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992).  Hinojosa currently has no evidence that: Defendants affirmatively participated in any unconstitutional acts or implemented a policy of understaffing; Defendants were aware that any understaffing produced a substantial risk of harm to inmate safety; and Defendants failed to take or could take reasonable steps in an attempt to rectify the problem.  In his Rule 56(f) motion, Hinojosa simply does not explain how discovery will produce any evidence addressing these deficiencies, and, thus, the district court did not abuse its discretion by denying Hinojosa discovery.  See Access Telecom, Inc., 197 F.3d at 719-20 (finding that where a party fails to explain how discovery will create a genuine issue of material fact, it is not an abuse of discretion to deny a Rule 56(f) motion).

Because the district court properly proceeded to summary judgment on this claim, and because Hinojosa's summary judgment evidence failed to create a genuine issue of material fact, the district court correctly granted summary judgment on this claim.  We thus AFFIRM the district court's grant of summary judgment in favor of Defendants Johnson and Dretke.

V.

---

[14] This Court may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."  Holtzclaw v. DSC Commc'ns Corp., 255 F.3d 254, 258 (5th Cir. 2001).

Defendants Dretke, Laughlin, Simpson, and Webster also argue that the district court's grant of summary judgment in their favor should be affirmed because Hinojosa failed to exhaust his administrative remedies against them. Hinojosa concedes that he did not specifically name these Defendants in his administrative grievance. Because we have already determined that summary judgment in favor of Defendant Dretke should be affirmed, we need not consider Hinojosa's failure to exhaust administrative remedies against him.

42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PRLA does not, however, specify who must be named in a prison grievance in order to exhaust properly the prison grievance system. See Jones v. Bock, – U.S. –, 127 S. Ct. 910, 922-23 (2007). Instead, "it is the prison's requirements, and not the PRLA, that define the boundaries of proper exhaustion." Id. at 923. Defendants do not argue, and nothing in the record indicates, that the Texas grievance procedures require the prisoner to specifically name a particular official.

"[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004). However, a grievance "must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." Id.

No party, however, has cited to Hinojosa's administrative grievance and it is unclear whether it is even part of the record on appeal.[15] We thus REMAND to the district court to determine in the first instance whether Hinojosa's administrative grievance "provide[d] administrators with a fair opportunity under the circumstances to address the problem[s] that . . . later form[ed] the basis of [Hinojosa's] suit." Id.

## VI.

Hinojosa finally argues that the district court abused its discretion in denying his motion for appointment of counsel. A civil rights plaintiff has no right to appointment of counsel absent exceptional circumstances. Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982). In ruling on requests for appointment of counsel, courts should consider:

> (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately his case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination.

Id. at 213 (citations omitted). Noting that "Hinojosa has managed to prosecute his claims in a reasonably effective manner," the district court denied Hinojosa appointed counsel. Because Hinojosa's case is not complex and Hinojosa has heretofore effectively represented himself, we cannot say that the district court abused its discretion in denying appointed counsel.[16]

---

[15] Defendants Laughlin, Simpson, and Webster argued failure to exhaust administrative remedies before the district court, but the district court did not reach the issue. No party cited to Hinojosa's administrative grievance during the district court proceedings, as well.

[16] Given that the district court denied counsel after it determined that Hinojosa would not be allowed to conduct discovery before responding to Defendants' motion for summary judgment, the district court may wish to consider anew appointment of counsel, as it may determine that Hinojosa's incarcerated status will prevent him from adequately conducting the discovery to which he is entitled. We offer no view on the appropriate determination if the district court does in fact reconsider appointment of counsel.

## VII.

For the foregoing reasons, we AFFIRM in part, REVERSE in part, VACATE in part, and REMAND this case for further proceedings consistent with this opinion.