Phelix Ramon CAUSEY

v.

THE PARISH OF TANGIPAHOA et al.

No. Civ.A. 00–2352.

United States District Court,
E.D. Louisiana.

April 12, 2001.

Paula Anne Perrone, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, for Plaintiff.

Clifton Thomas Speed, Office of District Atty., Greensburg, LA, for Defendant.

Scott G. Vincent, New Orleans, LA, for Scott Perrilloux, Richard R. Perkins.

Winston Gerard DeCuir, Linda Law Clark, DeCuir & Clark, Baton Rouge, LA, Ron S. Macaluso, Hammond, LA, for Hal Price, Hammond City, Hammond Poolice Dept., Southeastern Louisiana University Police Dept.

### ORDER AND REASONS

DUVAL, District Judge.

Before the Court motions to dismiss filed by two groups of defendants, (1) J. Edward Layrisson, Charles Fitz and the Tangipahoa Parish Sheriff's Office (doc. 16)and (2) the Hammond Police Dept., the City of Hammond, Detective Price, Detective Pevey, Lieutenant Miller and Detective Deliberto (doc. 25) as well as a motion for judgment on the pleadings by Southeastern Louisiana University and Sergeant Hal Price (doc. 29). The Court heard oral argument on the motions on January 31, 2001 and has considered the pleadings, memoranda and relevant law and finds for the reasons that follow.

### I. Background

On October 7, 1998 members of the Tangipahoa Parish Sheriff's Department arrested Larry Briggs in connection with the October 1, 1998, murder of Robert Connelly. Briggs, the driver of the vehicle, gave a statement on October 7, 1998. Briggs told police that the other men in the car with him were "Champ" (real name Felix Baptiste), the shooter and "Mike" (Champ's cousin), simply a passenger, Complaint at ¶ 6. Approximately two hours later, Briggs gave a different version of the story, identifying Reggie Moore ("Mike") as the shooter and Champ ("Phyllis Baptiste") as the passenger. Complaint at ¶ 7. In his third statement to police, Briggs admitted that he falsely identified "Champ" ("Phyllis Baptiste") out of fear that if he did identify the true gunman (Reggie Moore) there would be reprisals

against him or his family. Complaint at ¶ 8. Although none of the names provided to police was an identical match with the plaintiff here, plaintiff's grandmother told law enforcement that "Phelix Batiste" was her grandson's alias.

Based on the statement implicating "Champ" as the murderer, and the grandmother's statement that Phelix Batiste was plaintiff's alias, Southeastern Louisiana University police officer Hal Price appeared before Judge Douglas Hughes of the 21st Judicial District Court of the Parish of Tangipahoa and obtained an arrest warrant for Phyllis Batiste Causey (alias "Champ"). See State of Louisiana v. Phyllis Batiste Causey, No. 98–003477, 21st Judicial District Court, 10/7/98. One day later, on October 8, 1998, plaintiff Causey was arrested by officers of the Hammond Police Department and questioned. During an October 8, 1998 interrogation conducted by Officer Hal Price and Detective Pevey, plaintiff stated that he was present in the backseat of Briggs' car when the shooting occurred. See Complaint at ¶ 11.

On October 9, 1998 Reggie Moore allegedly told one of the officers that a man named "Dooley" (Marquis Frazier) was the third man in the car, not Causey. On October 14, 1998 Briggs made a fourth statement to the police, this time stating that "Dooley" also went by the nickname "Champ" and then stating that Causey was not the "Champ" he referred to in his previous statements. Complaint at ¶ 14. On October 14, Dooley (Marquis Frazier) was arrested and he subsequently admitted that he was the third person in the car along with Briggs and Moore. Complaint at ¶¶ 14–15. Thus, by the time Marquis Frazier confessed to being a passenger in the car, four men had confessed to being in a car that only had three occupants at the time the shooting occurred.

On October 22, 1998 a grand jury in Tangipahoa Parish returned a true bill on

Causey, Frazier, Briggs and Moore on the charge of second degree murder. Complaint at ¶ 17. The grand jury issued a second indictment for the same charge on October 29, 1998. The prosecutor on each indictment was Assistant District Attorney Richard Pickens.

On January 19, 1999 plaintiff brought a motion to suppress his October 1998 confession, arguing that the confession was "illegally procured without warrant and without probable cause." Complaint at ¶ 17. At the hearing Officer Price verified that Briggs' statements and Causey's confession constituted the extent of the State's evidence against Causey. Complaint at ¶ 18. The presiding judge, Judge Drake, denied Causey's motion. *Id.* Presumably, the reason plaintiff's motion was denied because the trial judge made a finding of a valid arrest warrant and probable cause.

Plaintiff's bail was originally set at $500,000.00 and thereafter reduced to $175,000.00. Complaint at ¶ 19. Plaintiff then presented three bonds totaling $175,000.00 to the Tangipahoa Parish Sheriff's Office, which although approved by a district judge in the parish in which the property was located, were denied by Chief Charles Fitz due to defects in the mortgage certificates. Complaint at ¶ 19.

Approximately two weeks before the August 9, 1999 trial was to commence, Causey submitted to a lie detector test, which confirmed his innocence. On August 9, 1999 upon motion of the state, an order of nolle prosse was entered and the second degree murder charge was dismissed. Complaint at ¶ 20.

Plaintiff alleges that racial animus was the driving force behind his arrest and imprisonment. Complaint at ¶ 23. He claims that the "primarily Caucasian" Tangipahoa Parish Police Department sought retribution against the African American defendant because a Caucasian was killed. *Id.* Causey claims that his Fourth, Fifth and Fourteenth Amendment rights were violated in that his following federally guaranteed rights were violated: (1) freedom from illegal search and seizure; (2) freedom from illegal detention; (3) freedom from humiliation, intimidation and harassment; (4) freedom from malicious prosecution; (5) enjoyment of life, liberty and property and freedom from their deprivation without due process of law; (6) equal protection of the law; (7) freedom from invasion of privacy; (8) earn a living without illegal interference. Plaintiff alleges that defendants' actions, under color of state law, individually and through their conspiracy with one another, were in accordance with the official policy of the Tangipahoa Parish Sheriff's Department. Complaint at ¶ 24.

At this juncture, the Court is presented with a plaintiff arrested pursuant to valid arrest warrant who confessed to committing a crime and who was indicted twice and whose statements were deemed admissible after a suppression hearing. Plaintiff sued a plethora of persons and entities. By Minute Entry entered March 27, 2001 (doc. 37), this Court granted District Attorney Scott Perriloux's and former Assistant District Attorney Richard Picken's motions to dismiss based on absolute prosecutorial immunity and dismissed plaintiff's claim against the District Attorney's Office for the 21st Judicial District on the grounds that the office is not a proper party defendant. On April 4, 2001 (doc. 38), the Court granted the Tangipahoa Parish Council–President Government's consent motion to withdraw its motion to dismiss.

Although plaintiff sued a myriad of defendants, the Court notes that the complaint and amended complaint are extremely vague. Neither pleading specifically alleges which defendant or defendants committed the alleged transgressions. Indeed, plaintiff names sev-

eral persons in their individual and official capacities, but fails to delineate what activities by those persons were carried out in the different capacities. Moreover, the complaint names multiple defendants who do not have capacity to be sued under Louisiana law. The utter ambiguity of the complaint and amended complaint are further demonstrated by the fact that several of the named defendants do not even appear in the body of either pleading. To the extent that certain defendants are named in more than one capacity, the Court has analyzed whether claims can go forward against certain defendants in multiple capacities and as far as the factual allegations go, the Court has applied the facts to the defendants discretely identified with the alleged activities.

Layrisson, Fitz and the Tangipahoa Parish Sheriff's Department make several arguments, asserting defenses of sovereign immunity, absolute immunity, qualified immunity, and the preclusive effect of a prior determination of probable cause, among others. Plaintiff contends that he has adequately plead his cause of action and overcome the immunity defenses. Alternatively plaintiff requests an opportunity to conduct limited discovery and amend his complaint. Neither party accurately focuses its arguments on the parties and their proper procedural capacities, thus the arguments are largely unhelpful. However, the Court shall properly characterize the parties, evaluate if there is indeed a cause of action against such a party or entity, and then determine whether or not immunity defenses and heightened pleading requirements are available. First, the Court presents the relevant legal standards.

## II. Standard for Motion to Dismiss

"A motion to dismiss for failure to state a claim upon which relief can be granted is a disfavored means of disposing of a case." *Kennedy v. Tangipahoa Parish Library Board of Control,* 224 F.3d 359, 365 (5th Cir.2000) (citations omitted). "A motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts.'" *Crowe v. Henry,* 43 F.3d 198, 203 (5th Cir.1995)(*quoting Ward v. Hudnell,* 366 F.2d 247, 249 (5th Cir.1966)). "The district court may not dismiss a complaint under rule 12(b)(6) 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Collins v. Morgan Stanley Dean Witter,* 2000 WL 1159321 at *2 (5th Cir.2000) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Spiller v. City of Texas City Police Dept.,* 130 F.3d 162, 164 (5th Cir.1997). "In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations." *Id.; see also Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 677 F.2d 1045 (5th Cir.1982). That being said, it is well established that courts do not have to accept every allegation in the complaint as true in considering its sufficiency. 5A Wright & Miller, *Federal Practice & Procedure* § 1357, at 311; *see also Associated Builders, Inc. v. Alabama Power Company,* 505 F.2d 97, 100 (5th Cir.1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true). Courts do not have to accept "legal conclusions, 'unsupported conclusions,' 'unwarranted references,' or 'sweeping legal conclusions cast in the form of factual allegations.'" Wright & Miller at 315–18.

In the context of 42 U.S.C. § 1983 claims, it is well established that the claimant must plead specific facts, not mere conclusory allegations to survive a motion

to dismiss. *Streetman v. Jordan,* 918 F.2d 555, 557 (5ᵗʰ Cir.1990); *Morrison v. City of Baton Rouge,* 761 F.2d 242, 244 (5ᵗʰ Cir.1985) (*citing Elliott v. Perez,* 751 F.2d 1472, 1479 (5ᵗʰ Cir.1985)). In cases such as this, where civil rights complaints are lodged against public officials for actions undertaken in their official capacities, the Fifth Circuit has recognized that "liberal notions of notice pleading must ultimately give way to immunity doctrines that protect us from having the work of our public officials chilled or disrupted by participation in the trial or the pretrial development of civil lawsuits." *Morrison,* 761 F.2d at 244. As such, the United States Court of Appeals for the Fifth Circuit has "consistently held that plaintiffs who invoke § 1983 must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Geter v. Fortenberry,* 849 F.2d 1550, 1553 (5ᵗʰ Cir.1988) (*citing Elliott v. Perez,* 751 F.2d 1472, 1479 n. 20 (5ᵗʰ Cir.1985)). The heightened pleading requirement in civil rights cases against those asserting immunity is necessary because to allow traditional discovery to commence based on broadly worded complaints "effectively eviscerates important functions and protections of official immunity." *Id*

That said, in evaluating the merit of defendants' immunity defense, the Court "accept[s] the allegations of [plaintiff's] complaint as true." *Kalina v. Fletcher,* 522 U.S. 118, 122, 118 S.Ct. 502, 505, 139 L.Ed.2d 471 (1997) (citation omitted).

## III. Analysis

### A. The Tangipahoa Parish Defendants

#### 1. The Tangipahoa Parish Sheriff's Office

■ "It is well settled ... that a Sheriff's Department is not a legal entity capable of being sued." *Valentine v. Bonneville Ins. Co.,* 691 So.2d 665, 668 (La.1997) (citations omitted). Indeed, "the law of Louisiana affords no legal status to the 'Parish Sheriff's Department' so that the department can sue or be sued, such status being reserved for the Sheriff." *Id. See also George v. Wilson,* 2000 WL 521450 (E.D.La.4/28/00); *Manieri v. Layirrison,* 2001 WL 25657 (E.D.La.1/9/01); *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dept.,* 350 So.2d 236 (La.App. 3 Cir.1977). Thus, plaintiff's claim against the Tangipahoa Parish Sheriff's Office must be dismissed as it is not a proper party defendant to this action.

#### 2. Sheriff Layrisson and Chief Fitz

■ The parties have made several amorphous claims and defenses with respect to Layrisson and Fitz, asserting causes of action and immunity defenses without clearly analyzing the capacity in which the defendants have been sued. In *Turner v. Houma Municipal Fire and Police Civil Service Bd.,* 229 F.3d 478 (5ᵗʰ Cir.2000), the Court of Appeals criticized omnibus assertions of liability and immunity, stating that "[t]he performance of official duties creates two potential liabilities, individual-capacity liability for the person and official capacity liability for the municipality." *Id.* at 484. Recognizing the distinction is fundamental because "defenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official capacity suits." *Id.* at 483 (*citing Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

■ Against Fitz and Layrisson in official capacities, there is no heightened pleading standard. In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct.

1160, 122 L.Ed.2d 517 (1993), Supreme Court held that, because municipalities do not enjoy absolute or qualified immunity from suit, plaintiffs need not satisfy a heightened pleading standard when suing such entities. Applying the Court's reasoning with respect to *Leatherman*, the Fifth Circuit Court of Appeals has stated that since official capacity suits are in essence suits against the municipality, defendants sued in their official capacities do not get the added protection of heightened pleading standards. *Anderson v. Pasadena Independent School Dist.*, 184 F.3d 439 (5th Cir.1999); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996); *Lee v. Morial*, 2000 WL 726882 (E.D.La.6/2/00); *Sakla v. The City of New Orleans*, 1998 WL 830652 (E.D.La.11/30/98); *Hobbs v. City of Garland*, 1998 WL 485684 (N.D.Tex.8/7/98). Therefore, the Court must analyze the claim against defendants in their official capacities under the liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, but shall apply the heightened pleading standards to the claim against Fitz acting in his individual capacity.

 Plaintiff alleges that his constitutional rights were violated in two manners, (1) an illegal, warrantless arrest and (2) denial of his bond for no apparent reason. He states that those violations were made in accordance with the official policy of the Tangipahoa Parish Sheriff's Department.[1] A municipality may be held liable under section 1983. *Monell v. New York City Dept. Of Social Serv.*, 436 U.S. 658, 689, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). However, a municipality cannot be held liable under section 1983 solely because it employs a tortfeasor. *Id., see also Board of the County Commissioners of Bryan*

*County v. Brown*, 520 U.S.397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Rather, a plaintiff must identify a municipal "policy" or "custom" that caused his or her injury. *Id., see also Monell*, 436 U.S. at 694, 98 S.Ct. at 2027. The *Brown* court significantly narrowed the test set out in *Monell*, stating:

> ... it is not enough for a § 1983 plaintiff to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Brown*, 117 S.Ct. at 1388.

Under section 1983, the "requisite degree of culpability" is that the municipality acted with at least "deliberate indifference" to the consequences of its actions. Plaintiff must show not only that the police officers violated his constitutional rights but that the Sheriff's policies were the "moving force" behind his injury by acting with "deliberate indifference" to the likelihood of injury. To show an unconstitutional policy or custom, the plaintiff must identify the policy or custom, connect the policy or custom with the government entity itself, and show that the particular injury was incurred because of the execution of that policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984)(en banc); *Lee v. Morial*, 2000 WL 726882 (E.D.La.6/2/00). If plaintiff fails to allege an official policy or custom, then his claim is subject to dismissal. *See Meadowbriar Home for*

---

1. Plaintiff also states that the defendants conspired with each other in accordance with the policy of the Tangipahoa Parish Sheriff's Department. Such a limited conclusory allega-

tion is insufficient to withstand a motion to dismiss. *See Streetman v.. Jordan*, 918 F.2d 555 (5th Cir.1991) (*citing Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir.1987)).

*Children, Inc. v. Gunn,* 81 F.3d 521, 532–33 (5 th Cir.1996).

The Court need not consider the warrantless arrest issue because "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg,* 36 F.3d 453, 456 (5 th Cir.1994); *Paddio v. City of Hammond,* 1997 WL 289704 (E.D.La.5/28/1997). All told, independent persons or bodies made four findings of probable cause as to plaintiff's involvement with the crime, three after he confessed. It is clear that plaintiff was arrested pursuant to a valid arrest warrant issued by a neutral judicial officer. Although plaintiff claimed that he was not arrested pursuant to a warrant, and never mentions a defective warrant, the Court is convinced otherwise. Defendants attached a copy of the arrest warrant to their brief and, a public record, the Court is entitled to consider such a matter in connection with a Rule 12(b)(6) motion. *See Davis v. Bayless,* 70 F.3d 367, 372 (5 th Cir. 1995)(court can take judicial notice of state court orders when deciding a motion to dismiss); *Fortney v. Petron, Inc.,* 1992 WL 236936 (E.D.La.9/1/1992); *Bob Hamric Chevrolet, Inc. v. USA, Internal Revenue Service,* 849 F.Supp. 500 (W.D.Tex. 1994); Wright & Miller, *Federal Practice and Procedure:* Civil 2d § 1357 at 299. Indeed, the warrant was issued by a state district judge and stood through a motion to suppress. *See Williams v. DiVittoria,* 777 F.Supp. 1332,1337 (E.D.La.1991) (when court determine that arrest was made with probable cause plaintiff cannot argue in a civil action that the arrest was illegal). Since there can be no liability on the arresting officers who acted pursuant to a valid arrest warrant, there cannot be official liability on behalf of the Sheriff. *See Duckett v. City of Cedar Park, Texas,* 950

F.2d 272 (5 th Cir.1992); *Casanova v. City of Brookshire,* 119 F.Supp.2d 639, 651(S.D.Tex.2000) (evidence that arrest was carried out pursuant to valid arrest warrant forecloses 1983 claim for false arrest); *Patterson v. J.M. Armatys,* 808 F.Supp. 550, 553 (E.D.Tex.1992) (motion to dismiss proper when facts do not allege that officers mislead magistrate when obtaining arrest warrant) *See generally Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (sheriff executing an arrest warrant is not required to investigate every claim of innocence, including mistaken identity). Moreover, plaintiff was indicted twice by a grand jury, which further cuts off liability on the part of the arresting officers. *See Rodriguez v. Ritchey,* 556 F.2d 1185, 1191 (5 th Cir.1977)(indictment by grand jury conclusively determines the existence of probable cause); *Casanova v. City of Brookshire,* 119 F.Supp.2d 639 (S.D.Tex. 2000); *Von Williams v. City of Bridge City, Texas,* 588 F.Supp. 1187, 1191 (E.D.Tex.1984) (grand jury indictment conclusively establishes probable cause); *Bordeaux v. Lynch,* 958 F.Supp. 77, 83 (N.D.N.Y.1997) (grand jury indictment establishes presumption of probable cause).

With respect to the bond, plaintiff alleges that the failure to honor such bond was "in accordance with the official policy of the Tangipahoa Parish Sheriff's Department." Complaint at ¶ 24. This allegation fails for several reasons. At the most basic level of analysis, plaintiff does not allege specific facts. *See Fraire v. Arlington,* 957 F.2d 1268 (5 th Cir.1992) (allegations of custom cannot be conclusory); *Aston v. City of Cleburne,* 2000 WL 217876 (N.D.Tex.2/22/2000) (motion to dismiss granted when plaintiff does not plead specific, identifiable unconstitutional policy). The complaint states that the deprivation of rights was "in accordance with"

the official policy of the Sheriff's Department; however, this bald assertion need not be accepted by the Court. *See Spiller v. City of Texas City, Police Department,* 130 F.3d 162, 167 (5 th Cir.1997) (allegation that actor's violations were "in compliance with" the municipality's customs insufficient because it is conclusory). See *also Clouatre v. Westwego Police Officer Linda Taylor, et al.,* 1998 WL 46819 (E.D.La.2/4/98) (allegation that "it is the policy of the defendant", with nothing more, is conclusory and does not alleged sufficient facts from which to infer a policy or custom). Moreover, by alleging that the defendants acts were "in accordance" with official policy, plaintiff fails to allege the necessary causation requirement. See *Spiller v. City of Texas City, Police Department,* 130 F.3d 162, 167 (5 th Cir.1997) (allegation that policies "led to" the unconstitutional acts is insufficient to allege causation). Finally, conclusory allegations that he was discriminated against based on his race is inadequate to state a claim under 1983. *See Muhammad v. Louisiana,* 2000 WL 1511181 (E.D.La.10/6/00) (*citing Fernandez–Montes v. Allied Pilots Assoc.,* 987 F.2d 278, 284 (5 th Cir.1993)). Thus, based upon plaintiff's allegations, there is no indication that the refusal to accept the release bond was based on a racially discriminatory policy.

Additionally, the official capacity claim against Chief Fitz must be dismissed. According to the complaint, Chief Fitz is an officer of the Tangipahoa Parish Sheriff's Office, acting under Sheriff Layrisson. The Court must determine whether, for purposes of an official capacity suit, which is in everything but name, a claim against the municipality itself, *see Turner,* 229 F.3d at 483, whether Chief Fitz is a final decision maker. This determination is important because only those possessing final policy making authority represent official policy. *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 109 S.Ct. 2702,

105 L.Ed.2d 598 (1989). In arriving at the solution, "state law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Bennett v. Pippin,* 74 F.3d 578, 586 (5 th Cir.1996) (citations omitted). "The final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees; merely granting an employee discretionary authority." *Lee v. Morial,* 2000 WL 726882 at *2 (E.D.La.6/2/00) (*citing City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) and *Jett v. Dallas Indep. School Dist.,* 7 F.3d 1241 (5 th Cir. 1993)). Under Louisiana law, it is clear that "the Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office." *Jones v. St. Tammany Parish Jail,* 4 F.Supp.2d 606, 614 (E.D.La.1998) (citations omitted). Indeed, "the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff." *Burge v. Parish of St. Tammany,* 187 F.3d 452, 470 (5 th Cir. 1999); *Thomas v. Frederick,* 766 F.Supp. 540 (W.D.La.1991) (citations omitted); *Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669 (La.1981). Moreover, with respect to the denial of the bond, without which plaintiff had to remain in jail, "sheriffs are the final policymakers with respect to management of the jails." *Broussard v. Foti,* 2001 WL 258055 at *2 (E.D.La.3/14/01); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La.4/24/00). The law is clear that an officer acting under the direction of the Sheriff cannot be sued in his official capacity. Here, the cause of action against the Sheriff is based on the allegations concerning his official policies, and judgment, if any, will be collected from the parish. It is simply redundant to

sue the deputy in an official capacity when the sheriff is already named as a party for the actions of his chief. Plaintiff's allegations with respect to the official policies of the Tangipahoa Parish Sheriff's Department are adequately safeguarded through his ability to sue the Sheriff. Therefore, the claim against Chief Fitz acting in his "official capacity" must be dismissed.

The Court next moves on to the claim against Chief Fitz in his individual capacity. It is in this context that the doctrine of qualified immunity becomes pertinent.

■■■ "One of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit." *Jackson v. City of Beaumont Police Department,* 958 F.2d 616 (5th Cir.1992); *Salas v. Carpenter,* 980 F.2d 299 (5th Cir.1992).

■■■ It is well settled that the qualified immunity analysis entails a two step process.

First, a court must determine whether plaintiff has alleged the violation of a constitutional right. Second, if the plaintiff has alleged a constitutional violation, the court must decide if the conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred.

*Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir.2001) (citations omitted); *Baker v. Putnal,* 75 F.3d 190, 198 (5th Cir.1996); *Morin v. Caire,* 77 F.3d 116 (5th Cir.1996).

■■■ Plaintiff alleges that Chief Fitz refused to honor plaintiff's release bonds without good reason on account of defective mortgage certificates that Chief Fitz insisted were encumbrances on the immovable properties securing the bond. Plaintiff also alleges that he corrected the defective mortgage certificates but does not state what action was taken in response. In a Rule to Show Cause Why Bond Should Not be Accepted that was filed in

Causey's criminal action, his lawyer at the time represented that Chief Fitz refused to honor the bonds because of a notation of a restraining order relating to a bankruptcy that was present on the mortgage certificate.

■■■ As stated above, the question of whether a public official is covered by qualified immunity entails a two step inquiry. First, the court must find that the official violated a clearly established constitutional right. Then, the court must determine whether or not the conduct was objectively unreasonable in light of the law at the time the conduct occurred. *Piazza v. Mayne,* 217 F.3d 239, 244 (5th Cir.2000). In this case, Causey does not satisfy the heightened pleading requirement necessary to overcome the qualified immunity defense because plaintiff has not plead that Chief Fitz' actions violated a constitutional right or were in knowing violation of the law. Plaintiff cannot rest upon conclusory allegations such as refusing to honor the bonds "without good reason" or "illegally" in order to overcome the qualified immunity defense. *See Jackson v. City of Beaumont Police Department,* 958 F.2d 616, 620 (5th Cir.1992) (mere conclusory allegations and bold assertions are insufficient to meet heightened pleading standard necessary to overcome qualified immunity defense). The complaint is devoid of any specific factual allegations to support the conclusion that the bonds and securities were indeed valid and without defect. The extrinsic public record evidence suggests that there were indeed irregularities in the mortgage certificate. Moreover, the complaint provides an objectively reasonable explanation for Chief Fitz' refusal to honor the bonds. Indeed, plaintiff alleges that Chief Fitz said that there were encumbrances on the mortgage certificates. Taking this allegation as true, there appears to be good reason to not honor the

bonds. Therefore, even if plaintiff alleged a violation of a constitutional right, which he did not, Fitz would nevertheless be entitled to qualified immunity because the complaint does not reflect that Fitz acted objectively unreasonably. *See Williams v. Farrior,* 626 F.Supp. 983 (S.D.Miss.1986) (sheriff has discretion in determining reliability of surety because there is no absolute entitlement to pretrial release). For even if Chief Fitz was in error in examining the validity of the bail bonds, negligence is not a ground for 1983 liability. *See Evans v. City of Marlin, Texas,* 986 F.2d 104, 108 (5th Cir.1993); *Eddins v. Excelsior Indep. School Dist.,* 88 F.Supp.2d 683, 688 (E.D.Tex.2000).

## B. The Hammond Defendants

1. Hammond Police Department, City of Hammond, Lieutenant Miller and Detective Deliberto

█ Plaintiff makes no accusation whatsoever against the Hammond Police Department, The City of Hammond, Lieutenant Miller, or Detective Deliberto ---- their identities or conduct appear nowhere in the original or amended complaint. Indeed, plaintiff filed a first amended complaint in order to plead a *Monell* claim against the Tangipahoa Parish Council, but failed to make any claim concerning a policy or custom on behalf of the City of Hammond or the Hammond Police Department that caused a violation of his rights by either entity. *See e.g., Spiller v. City of Texas City, Police Dept.,* 130 F.3d 162 (5th Cir.1997) (in order to hold municipality or local government unit liable under section 1983 plaintiff must allege official policy or custom); *Coleman v. Dallas Ind. School Dist.,* 2000 WL 715990 (N.D.Tex.6/1/000) (same). Furthermore, as the Court discussed above with respect to the Tangipahoa Parish Sheriff's Department, the City of Hammond Police Department is merely a department within the City of Hammond, and not a proper party defendant. *See Norwood v. City of Hammond et al.,* 1999 WL 777713 (E.D.La.9/30/1999) (City of Hammond Police Department not a suable entity); *Maxwell v. J. Henry,* 815 F.Supp. 213 (S.D.Tex.1993). Nor has plaintiff plead any conduct on the part of Detective Deliberto or Lieutenant Miller, either individually or as policymakers for the Hammond Police Department. *See e.g., Martin v. Thomas,* 973 F.2d 449 (5th Cir.1992) (an essential element of section 1983 claim is that conduct must be committed by person acting under state law). Accordingly, the claims against these four defendants must be dismissed because neither the complaint or the amended complaint makes any allegation whatsoever against any of the aforementioned defendants.

2. Detective Pevey

█ Initially, the Court notices that plaintiff makes no allegation against Detective Pevey acting as a final decision making authority for the City of Hammond. As such, the official capacity claims must be dismissed. Moreover, plaintiff's official capacity claims against this defendant cannot stand as a matter of Fifth Circuit law. In *Turner v. Houma Municipal Fire and Police Civil Service Board,* 229 F.3d 478 (5th Cir.2000), the court stated that

> In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued, there potentially exists an overlapping cause of action. The official-capacity claims and the claims against the governmental entity essentially merge. Thus, when the suit against the city or state fails for a jurisdictional, procedural, or pleading defect, the remaining immunity discussion by the courts necessarily concerns only the

personal liability of individuals sued in their individual capacities.

*Id.* at 485 (emphasis added). Such is the case here where the plaintiff also sued the City of Hammond, which failed on account of pleading defects. Accordingly, the Court moves on to the remaining individual defendant, looking solely to his personal liability.

As to Detective Pevey in his individual capacity, plaintiff's sole allegation against Detective Pevey is found at paragraph 11 of his complaint. Paragraph 11 states in pertinent part, "During an interrogation conducted by Sgt. Hal Price, [sic] Detective Pevey, at 1:00 p.m., Plaintiff made a false and inculpatory statement which was later used as evidence against him. In relevant part, Causey stated that he was in present [sic] in the back seat of Briggs' car when the shooting occurred." Complaint at ¶ 11. The Amended Complaint makes no further reference to Detective Pevey. In other words, Pevey's only involvement in this matter, as alleged by plaintiff, concerns questioning Causey with regards to his presence at the murder scene. Causey's confession to being at the murder scene, when in reality he was not, is insufficient to plead facts with specificity to overcome Detective Pevey's qualified immunity defense. First, interrogating a defendant and obtaining a confession is not in violation of a constitutional right. Second, as alleged by plaintiff, Pevey's actions appear to be objectively reasonable. *See Piazza v. Mayne*, 217 F.3d 239, 244 (5th Cir.2000). Therefore the claims against Pevey must also be dismissed because plaintiff does not plead either prong necessary to overcome his qualified immunity.

## C. Southeastern Louisiana University and Sergeant Price

At oral argument, the parties advised the Court plaintiff has agreed to dismiss Southeastern Louisiana University/University Police and Hal Price in his official capacity by consent. Therefore, the only matter left for the Court is a motion for judgment on the pleadings/motion to dismiss on behalf of Hal Price in his individual capacity.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In this instance, the rule 12(c) motion is asserted as a vehicle to raise the defense of failure to state a claim upon which relief can be granted, therefore the same legal standard applied under Rule 12(b)(6) is applied to this Rule 12(c) motion. *Robinson v. ADM Gromark River Systems, Inc.*, 1996 WL 162077 at *1 (E.D.La.4/4/1996) (citations omitted). Thus, a court must "look only at the pleadings and accept them as true." *St. Paul Ins. of Bellaire v. AFIA Worldwide Ins.*, 937 F.2d 274, 279 (5th Cir.1991).

The allegations against Sergeant Price are as follows: (1) he interrogated plaintiff and obtained plaintiff's confession after plaintiff was arrested pursuant to an arrest warrant (Complaint at ¶ 11); (2) he took the driver's fourth statement wherein the driver stated that Causey was not the "Champ" he previously identified (Complaint at ¶ 14); (3) he took the confession wherein the second "Champ" admitted to being the third passenger in the car (Complaint at ¶ 15); and (4) he testified at plaintiff's suppression hearing that the confession and initial statements of the driver were the entirety of the evidence against plaintiff. He also testified that there was no physical evidence linking plaintiff to the crime (Complaint at ¶ 18). These claims are clearly insufficient to overcome Sergeant Price's defense of qualified immunity and the Court shall deal with the allegations in summary fashion. The complaint simply reveals that Ser-

geant Price investigated a murder, obtained a confession from Causey, and also obtained inculpatory and exculpatory statements from other persons with respect to Causey. Moreover, plaintiff alleges that Price testified honestly about the motion to suppress, revealing the confession as well as the lack of any physical evidence. As stated above, the intervention of a neutral judicial body on four occasions and the four separate findings of probable cause, both before and after plaintiff's confession to the crime, effectively destroys any claim that Causey may have against Detective Price for his activities in conjunction with the arrest or thereafter. Additionally and more fundamentally, the allegations fail to allege the breach of a constitutional right by Sergeant Price and thus are plainly insufficient to overcome Sergeant Price's qualified immunity as none of the allegations suggest a violation of a constitutional right or that Sergeant Price's conduct was objectively unreasonable. *See Piazza v. Mayne,* 217 F.3d 239, 244 (5 th Cir.2000); *West v. Congemi,* 28 F.Supp.2d 385 (E.D.La.1998) (first step in asserting a 1983 action is to allege the violation of a constitutional right).

Finally, in opposition to the motions to dismiss, plaintiff requested an opportunity to amend in order to state a cause of action. Considering that plaintiff already amended as of right, and essentially added nothing to the substance of his allegations and that plaintiff has had approximately six months to request further amendment and has not done so, the request to amend is denied. *See generally Spiller v. City of Texas City, Police Department,* 130 F.3d 162 (5 th Cir.1997); *Schultea v. Wood,* 47 F.3d 1427 (5 th Cir. 1995) (district court need not allow discovery until plaintiff has supported his claim with sufficient precision and factual specificity). Accordingly,

**IT IS ORDERED** that the defendants motions to dismiss are **GRANTED** with respect to defendant Sheriff Layrisson in his official capacity, the Tangipahoa Parish Sheriff's Office, defendant Charles Fitz in his official and individual capacities, the City of Hammond, the Hammond Police Department, Lieutenant Miller in his official and individual capacities, Detective Deliberto in his official and individual capacities, and Detective Pevey in his individual and official capacities, Southeastern Louisiana University/University Police and Sergeant Price in his official and individual capacities. The Court will decide whether or not to dismiss the pending state law claims after deciding the pending motion for summary judgment to be filed by the last remaining defendant, Tangipahoa Parish Council–President Government, subject to a federal claim.